## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEITH ANTONIO FINLEY,

                Petitioner,                    Case Number: 2:08-CV-14745

v.                                      HON. MARIANNE O. BATTANI

GREG MCQUIGGAN,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

This is a habeas corpus proceeding under 28 U.S.C. § 2254. Petitioner Keith Antonio Finley filed a *pro se* petition for a writ of habeas corpus challenging his convictions for first-degree premeditated murder and felony firearm. He claims these convictions are unlawful because the trial court improperly excluded evidence of other suspects and improperly denied defense counsel's request for a continuance, he received ineffective assistance of counsel, and the State destroyed exculpatory evidence. For the reasons that follow, the Court finds that habeas relief is not warranted and denies the petition.

### I. Facts

Petitioner's convictions arise from a shooting that occurred in Detroit on November 7, 2001. The shooting caused the death of Darryl Anthony Wright. He was tried with co-defendant Andrew Porch.

Daniel Leonard testified that, on November 7, 2001, he and the victim were standing in front of the Rocket Cab Company building at approximately 4:00 p.m. Wright jumped back suddenly and pushed Leonard back. Leonard was struck on the head and fell to the ground. He heard two gunshots and one or two footsteps. Leonard testified that he believed he was unconscious for at least two minutes. When he regained consciousness he ran into a liquor store, holding his head because he believed he had been shot. When a friend in the liquor store told him that he had not been shot, he ran outside and found Wright sprawled, unmoving on the sidewalk. Leonard testified that he wanted to leave the scene quickly because he was afraid. He jumped into a white Crown Victoria or LTD driven by an acquaintance, known to him as Boo Boo Twin. He asked the friend to drive him away.

Jasmanika Theus testified that, on the afternoon of the shooting, she was walking toward Leonard and the victim, when she saw Andrew Porch walking around the corner of the Rocket Cab Company. She stopped to greet him, but Porch shushed her. Porch proceeded to walk toward the cab company building. Theus saw Porch take a gun out of his pocket and swing it once. She saw him then point the gun at Wright and fire the gun. She heard three gunshots and saw Wright attempt to flee, but he collapsed on the sidewalk.

Pamela Foxworth testified that she was standing on the street near, but facing away from Leonard and Wright when she heard gunshots. She turned toward the scene and saw Wright attempt to flee, but collapse on the sidewalk. Foxworth testified that two men ran

2

after Wright, one of the men, who she identified as Petitioner, walked up to Wright after Wright had fallen to the ground, and shot at Wright. The other man, identified as co-defendant Porch, also had a handgun which he fired at Wright. After the shooting, the two men fled the scene in a green Cadillac driven by a third person.

Lenda McCarter testified that at the time of the shooting she was standing across the street from the Rocket Cab Company. She saw Wright walking toward the liquor store that was located adjacent to Rocket Cab. She then heard a gunshot coming from in front of the liquor store. She looked across the street and saw Wright walking quickly down the street. Wright tripped and fell. A man then approached Wright and stood over him. After a moment, the man fired approximately six gunshots at Wright. McCarter identified Petitioner as the individual who fired the shots at Wright. Petitioner left the scene in a green car driven by another man.

Dr. Leigh Hvalaty, an assistant medical examiner at the Wayne County Medical Examiner's Office, testified that she supervised the autopsy of Darryl Wright. She testified that seven gunshot entrance wounds were observed. There was no evidence of close-range firing (firing at less than two feet).

## II.  Procedural History

Petitioner was tried, along with co-defendant Andrew Porch, before a jury in Wayne County Circuit Court. He was found guilty of first-degree murder, felon in possession of a firearm, and possession of a firearm during the commission of a felony. On October 1, 2002, he was sentenced to life in prison for the murder conviction,

3

eighteen months to five years in prison for the felon-in-possession conviction, and two

years in prison for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals.  He also filed

a motion to remand for a hearing pursuant to *People v. Ginther*, 390 Mich. 436 (1973).

He raised these claims through counsel:

I.      Was defendant deprived his Am V and XIV rights of due process when the trial court refused evidence of other suspects?

II.     When substitute counsel was appointed August 19, 2002 shortly before trial (September 9, 2002) and the substituted attorney requested a continuance to prepare, did the trial court err reversibly in denying the motion for continuance?

III.    Did counsel's lack of preparation for trial deprive the defendant of effective assistance of counsel and the right to a fair trial?

Petitioner filed these additional claims in a pro per supplemental brief:

IV.     Was appellant Finley denied his state and federal constitutional rights to the effective assistance of counsel when: trial counsel failed to attempt to sever his trial from that of co-appellant Porch; failed to investigate potentially exculpatory witnesses; failed to call an exculpatory alibi witness at trial; failed to object to the presentation of extraneous information to the jury during deliberations; failed to request applicable jury instructions and to object to inapplicable jury instructions; and where trial counsel admitted he was unprepared to proceed to trial due to his late appointment to represent appellant Finley?

V.      Was appellant Finley denied his state and federal constitutional rights to a fair trial when potentially exculpatory evidence, in the possession of the state, was destroyed, thus prohibiting the defense from testing this evidence for its potentially exculpatory value?

VI.     Was the cumulative effect of the errors in appellant Finley's trial so prejudicial that it denied him a fair trial?

4

The Michigan Court of Appeals denied Petitioner's motion for remand, *People v. Finley*, No. 246159 (Mich. Ct. App. Apr. 1, 2004), and affirmed Petitioner's convictions. *People v. Finley*, No. 246159, 2004 WL 1488658 (Mich. Ct. App. July 1, 2004). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied. *People v. Finley*, 472 Mich. 893 (Mich. Apr. 26, 2005).

Petitioner then filed a motion for relief from judgment in the trial court. He raised these claims: (i) the trial court abused its discretion or committed other reversible error; (ii) the prosecutor denied the defendant a fair and impartial trial due to instances of misconduct; (iii) ineffective assistance of counsel; (iv) newly discovered evidence; and (v) ineffective assistance of counsel. The trial court denied the motion. *People v. Finley*, No. 02-8563-01 (Wayne Cty. Cir. Ct. Dec. 11, 2006).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising these claims:

I.    Did the trial court err in denying defendant's motion for relief from judgment and defendant's motion for evidentiary hearing?

II.   Did the trial court abuse its discretion or commit other reversible errors?

III.  Did the prosecutor deny the defendant a fair and impartial trial due to various instances of misconduct violating due process?

IV.   Was defendant denied a fair trial due to various instances of ineffective assistance of counsel?

V.    Was new evidence available to demonstrate that the defendant stands innocent of the crime for which his is convicted?

VI.   Was appellate counsel ineffective for failing to offer the previous

5

unreserved issues during the defendant's direct appeal by right that were significant and obvious?

The Michigan Court of Appeals denied leave to appeal. *People v. Finley*, No. 282094 (Mich. Ct. App. Apr. 8, 2008). Petitioner's subsequent application for leave to appeal to the Michigan Supreme Court was denied. *People v. Finley*, 482 Mich. 1032 (Mich. Oct. 27, 2008).

Petitioner then filed the pending habeas petition. He raises these claims:

I.    Defendant was deprived his constitutional right to due process when the trial court refused evidence of other suspects.

II.   The trial [court] denied Petitioner due process and effective assistance of counsel when the trial [court] denied Petitioner's newly appointed attorney a motion for continuance.

III.  Petitioner was denied effective assistance of counsel.

IV.   Petitioner was convicted unconstitutionally when exculpatory evidence in the possession of the state was destroyed and ultimately prohibited the Petitioner from testing it for its potentially exculpatory value.

V.    The cumulative effect of the errors in Petitioner's trial was so prejudicial that it denied him a fair trial.

### III.  Motion to Amend

Recently, Petitioner filed a motion to amend his habeas petition. He seeks to amend the petition to add further support to the claims raised and to raise additional claims. He admits that certain of the claims he wishes to amend have not been properly exhausted in state court.

This motion was filed after the respondent already filed a responsive pleading.

6

Section 2242 of Title 28 provides that an application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The applicable civil rule, Federal Rule of Civil Procedure 15(a), states that where, as here, a responsive pleading has been filed a party may amend its pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). When determining whether to grant leave to amend, the district court should consider "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. . . ." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir.1998).

Respondent has not responded to the motion and, therefore, has not argued that he would be prejudiced by allowing the amendment. The Court sees no basis for finding that the warden would be prejudiced by allowing the amendment. Further, the Court finds that the delay in seeking leave to amend was not excessive nor the result of bad faith. Thus, the Court grants the motion to amend. *See Wiedbrauk v. Lavigne*, 174 F. App'x 993, 1000 (6th Cir. 2006).

As noted, the amended petition provides additional argument in support of those claims raised in the original petition. The amended petition also raises the following additional claims: (i) counsel was ineffective for failing to raise the defense of third-party culpability; (ii) evidence against Petitioner was fabricated; (iii) counsel was rendered ineffective by the trial court's evidentiary rulings; (iv) Petitioner was denied his right to

7

counsel of choice; and (v) appellate counsel was ineffective in failing to raise these
unexhausted claims.  The Court addresses the additional arguments and claims raised in
the amended petition below.

### IV.  Standard

The petitioner's claims are reviewed against the standards established by the
Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat.
1214 (AEDPA).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a
rule that contradicts the governing law set forth in [Supreme Court cases]' or if it
'confronts a set of facts that are materially indistinguishable from a decision of [the
Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"
*Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*,
529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute

8

permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See*

*Williams,* 529 U.S. at 412.   Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).   "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."   *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations.   See 28 U.S.C. § 2254(e)(1).   A petitioner may rebut this presumption only with clear and convincing evidence.   *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## V.  Discussion

### A.  Right to Present a Defense

Petitioner argues that he was denied his right to present a defense because the trial court denied the request to admit evidence that only the co-defendant had been charged with the murder in a prior trial.  That trial ended in a hung jury.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law."  *Washington v. State*, 388 U.S. 14, 19 (1967).  It is one of the "minimum essentials of a fair trial."  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense– a right to his day in court– are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 18-19 (1967) (*quoting In re Oliver*, 333 U.S. 257 (1948)).

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather

11

is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* (*citing Rock v. Arkansas*, 483 U.S. 44, 58 (1987)); *see also Chambers v. Mississippi*, 410 U.S. 283, 302 (1973); *Washington v. Texas*, 388 U.S. 14, 22-23 (1967). Because criminal defendants are guaranteed a "meaningful opportunity to present a complete defense," courts cannot exclude defense evidence under evidentiary rules that "serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result. *See Davis v. Alaska*, 415 U.S. 308, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (*quoting California v. Trombetta*, 467 U.S. 479, 485 (1984)). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-691 (1984) (*quoting United States v. Cronic*, 466 U.S. 648, 656 (1984)). But, the Supreme Court has emphasized that "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."

12

*Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983).

The Michigan Court of Appeals held that evidence that Porch was the only defendant accused in the first trial was not wholly excluded at Petitioner's trial. Jasmanika Theus testified that she testified at Porch's trial and that Porch was the only defendant at that trial. The state court therefore held that Petitioner's argument was based upon an incorrect factual predicate. *Finley*, 2004 WL 1488658 at *8.

The trial court's decision to exclude further testimony regarding the first trial was a reasonable restriction on the right to present a defense. The trial court was concerned that further discussion of the first trial was irrelevant and would confuse the jury. The jury was made aware that Petitioner was not a defendant in the earlier trial.

Moreover, even if exclusion of evidence was erroneous under state law, the constitutional right to present a defense is not abridged unless the evidence was so material that it deprived the defendant of a fair trial. *Allen v. Howes*, 599 F. Supp. 2d 857, 872 (E.D. Mich. 2009). Even assuming that the trial court erred in excluding this testimony, the Court must determine whether the error was harmless. The test for whether an error is harmless is whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). When a federal court judge in a habeas proceeding is in "grave doubt" about whether a trial error of federal constitutional law had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless and the petitioner must prevail. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Only if a federal habeas

13

court can say with certainty that a trial error had little or no impact on the judgment, should the judgment stand. *See Barker v. Yukins*, 199 F.3d 867, 874 (6th Cir.1999).

In this case, exclusion of further testimony regarding the first trial did not deprive Petitioner of a fair trial. Petitioner sought to introduce testimony regarding the first trial to show that originally the police had a different theory about how the crime transpired. Petitioner was able to cross-examine prosecution witnesses about inconsistencies in their testimony regarding what occurred at the time of the shooting. The jury was aware that a prior trial did not include Petitioner as a defendant. For these reasons, the Court concludes that the evidentiary ruling regarding evidence of the prior trial did not violate Petitioner's right to present a defense and, even assuming it did, any error was harmless. Habeas relief is denied.

## B. Denial of Motion for Continuance

Petitioner's next claim for habeas corpus relief alleges that the trial court denied Petitioner due process and the effective assistance of counsel when it denied his substitute counsel's request for a continuance.

A trial court's denial of a continuance rises to the level of a constitutional violation only where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay.'" *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (*quoting Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)), "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the

14

reasons presented to the trial judge at the time the request is denied." *Ungar*, 376 U.S. at 589. To obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he "must also show that the denial of a continuance actually prejudiced his . . . defense." *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense." *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003).

The Michigan Court of Appeals held that there was no indication in the record that a written or oral motion for continuance was ever filed in this case. On habeas review, a federal court must presume the correctness of a state court's factual findings unless a petitioner rebuts this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner has not rebutted the state court's finding that a motion for continuance was never made with clear and convincing evidence. Therefore, Petitioner cannot establish that a request that was never made was arbitrarily denied.

Moreover, the Michigan Court of Appeals held that, even if a request for a continuance was made, Petitioner failed to demonstrate that he was prejudiced by the failure to grant a continuance. In reaching this determination, the Michigan Court of Appeals considered the following facts: substitute counsel had three weeks to prepare for trial; during the three week period, counsel filed pretrial motions to suppress evidence, for a separate trial, for appointment of a private investigator, and for discovery of the criminal and arrest records of the prosecution's chief witness; and counsel also filed a

15

notice of alibi. *Finley*, 2004 WL 1488658, at *8. After viewing the totality of the circumstances in this case, including those factors delineated by the Michigan Court of Appeals, the trial court's purported denial of Petitioner's request for a continuance did not prejudice the defense, so the Michigan Court of Appeals' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court precedent.

### C.  Ineffective Assistance of Counsel

Petitioner argues that habeas relief should be granted because he received ineffective assistance of counsel. Specifically, Petitioner argues that his trial attorney was ineffective in failing to: effectively cross-examine Jasmanika Theus; call witness Dani Belcher; or request an adverse inference instruction. Petitioner also argues that he was denied his right to counsel at a critical stage of the proceedings when the judge responded to a question during jury deliberations in the absence of defense counsel.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's

16

performance must be highly deferential." *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.

17

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

First, Petitioner argues that his attorney was ineffective in failing to cross-examine Jasmanika Theus. Theus identified co-defendant Porch as the shooter on direct examination. She testified that she had known Porch for a long time and, therefore, was able to easily identify him. Counsel did not cross-examine Theus. In light of Theus' failure to offer testimony incriminating Petitioner, it is reasonable to conclude that counsel determined it best not to cross-examine Theus and risk eliciting incriminating testimony.

Second, Petitioner argues that counsel was ineffective in failing to call as a witness Dani Belcher. Belcher testified at Porch's first trial and, Petitioner argues, her testimony was in direct conflict with the testimony of Pamela Foxworth and George Hughes at Petitioner's trial. The Court has reviewed Belcher's testimony in the first trial, which was submitted as part of the Rule 5 materials in co-defendant Porch's habeas corpus proceeding. *See Porch v. Lafler*, No. 2:06-cv-11329. Belcher's testimony would have

18

been of some relevance during Petitioner's trial in that she described the shooting generally, but she was unable to identify the shooter, stating that she did not get a close enough look at the shooter's face such that she subsequently would be able to identify him.  Belcher identified only one shooter in her testimony.  However, she admitted that she did not turn to the scene of the shooting until after the first couple of gunshots had been fired and that she observed the shooting from a substantial distance.  Given the limited usefulness of Belcher's testimony, Petitioner has not shown that counsel was ineffective for failing to call her to testify, nor has he shown that he was prejudiced by her absence.

Third, Petitioner agues that counsel failed to request an adverse inference instruction regarding ballistics evidence that was not preserved for testing.  As discussed more fully below, the bullets and casings collected from the scene of the shooting were accidentally discarded once in police custody.

The Michigan Court of Appeals held that an adverse inference instruction was not warranted in this case because Petitioner had not shown that the police acted in bad faith.  Because such an instruction was not required, the Michigan Court of Appeals held that counsel was not ineffective in failing to request one.

The Michigan Court of Appeals' decision is supported by the record.  All evidence tended to show the destruction of this evidence was accidental.  Petitioner has failed to satisfy the "doubly" deferential standard by which ineffective assistance of counsel claims are measured on habeas review.  Therefore, habeas review is denied on his

19

ineffective assistance of trial claim.

Fourth, Petitioner argues that he was denied the right to counsel during a critical stage of the proceedings when the court responded to a communication from the jury during deliberations outside the presence of defense counsel.  The jury asked to be provided with certain trial exhibits, a list of witnesses and their nicknames, and the transcripts of certain witnesses' testimony.  The trial court responded to the jury's request for exhibits by informing them that any exhibits requested that had been admitted into evidence would be provided to the jury, and that they would be provided with a list of witnesses and their nicknames.  Finally, in response to the jury's request for a transcript of certain witnesses' testimony, the court informed the jury that the transcripts had not yet been prepared, but if the jury determined that the transcripts were necessary the jury should inform the judge and the required steps would be taken to provide the transcripts.

An ineffective assistance of counsel claim is generally reviewed under the two-prong *Strickland* test described above.  However, a petitioner need not demonstrate prejudice in instances where the circumstances arising in the case "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  *U.S. v. Cronic*, 466 U.S. 648, 658 (1984).  Prejudice will be presumed where a defendant is denied the assistance of counsel at a critical stage in the proceedings. *Id.* at 659.  A critical stage of a criminal proceeding is "a step of a criminal proceeding . . . that h[olds] significant consequences for the accused."  *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).  Where counsel is absent or denied in such instances, "the likelihood that

20

the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (*citing Cronic*, 466 U.S. at 658-59 & 659 n. 26). The "individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict" is forgone only in such cases. *Id.*

The Michigan Court of Appeals held that it was not clear from the record whether Petitioner's attorney was absent when the court responded to the jurors' communication. The state court found it unnecessary to remand for clarification of the record because, even assuming counsel was absent, Petitioner was not entitled to relief. First, the state court held that the "brief meeting" between the court and the jury, which did not involve a new instruction, was not a critical stage of the proceedings. *Finley*, 2004 WL 1488658 at * 4-5. The state court reasoned as follows:

> Defendant Finley relies on *French v. Jones*, 332 F.3d 430, 436 (6th Cir. 2003) in which the Sixth Circuit Court of Appeals concluded that the giving of a supplementary instruction was a critical stage of the proceedings and that a harmless error analysis was not appropriate.
>
> More recently, however, the Sixth Circuit has indicated that the determination whether a trial court's communication with the jury is a "critical stage" depends in part on the nature of the communication. *Hudson v. Jones*, 351 F3d 212 (6th Cir. 2003). In *Hudson*, the Sixth Circuit drew a distinction between providing new, supplemental instructions (as in *French*, *supra* at 430 and *Curtis v. Duval*, 124 F.3d 1 (1st Cir. 1997)) and rereading instructions that the jury had already heard. The court analogized the case to *United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003), a case in which the trial court provided a transcript to the jury in the absence of counsel. There, the Third Circuit Court of Appeals rejected the defendant's argument that the absence of counsel in that instance entitled him to relief under *Cronic*, *supra* at 648. Instead, applying a harmless error

analysis, the court implicitly concluded that counsel's absence was not during a critical stage of the proceedings.  Relying on these authorities, the Sixth Circuit in *Hudson* concluded that the repetition of instructions "should not be deemed a 'critical stage in the proceedings.'"  *Hudson*, *supra* at 218.

The decisions of the Sixth Circuit recognize that the nature of a communication with the jury in the absence of counsel is crucial to analyzing whether the deprivation of counsel occurred during a "critical stage" of the proceedings.  Because the communication in this case involved no new instruction, we conclude that the brief meeting between the court and the jury was not a "critical stage" of the proceedings.

Our decision in this regard is supported by our Supreme Court's analysis of an alleged error based on ex parte communication between the court and the jury.  *See People v. France*, 436 Mich. 138, 142-143; 461 NW2d 621 (1990).  Although the Court in *France* did not expressly address a denial of counsel claim, the Court's recognition that communications that differ in their basic nature warrant different presumptions of prejudice is consistent with the approach taken by the Sixth Circuit.  The Court in *France* explained that substantive communications (including supplemental instruction) are presumed prejudicial regardless of objection, but the presumption may be rebutted "by a firm and definite showing of an absence of prejudice."  *Id.* at 163. . . .

Thus, because the portion of the proceeding in question was not a "critical stage," *Hudson, supra*, and because the communication was administrative in nature, *France, supra,* defendant Finley is not entitled to a presumption of prejudice.

*Finley*, 2004 WL 1488658 at * 4-5.

The Court agrees with the state court's conclusion that this case is factually

distinguishable from *French v. Jones*, 332 F.3d 430 (6th Cir. 2003), in which the Sixth

Circuit held that the delivery of a supplemental instruction to a thrice-deadlocked jury in

the absence of and without consulting defense counsel required automatic reversal under

*Cronic*.  The supplemental instructions in *French* were new and unquestionably

22

substantive. This case is more closely aligned factually with *Hudson v. Jones*, 351 F.3d

212, 217-18 (6th Cir. 2003). In *Hudson*, the Sixth Circuit Court of Appeals held that the

repetition, at the jury's request, of specific instructions that had previously been given in

the presence of defense counsel was not a critical stage of the proceedings.

      Moreover, even if this Court disagreed with the state court's conclusion that this

was not a critical stage in the proceedings, the state court's conclusion was not contrary to

or an unreasonable application of Supreme Court precedent. The state court considered

the nature of the communication and concluded that it was more akin to a repetition of

instructions or an administrative communication than it was to new, supplemental

instructions. The state court's decision was reasonable and finds additional support in

this and other circuits. *See Phillips v. Bradshaw*, 607 F.3d 199, 223-24 (6th Cir. 2010)

(the re-reading of identical jury instructions is not a critical stage of a trial); *Valentine v.

U.S.*, 488 F.3d 325, 335 (6th Cir. 2007) (cases in which the Sixth Circuit "has found

denial of counsel at a critical stage invariably involve a court instructing the jury about

the substantive elements of an offense or giving a deadlocked jury further instructions

about how to proceed"); *Martin v. Fanies*, 365 F. App'x 736, 738 (8th Cir. 2010)

(observing that no Supreme Court case has held that a judge's receipt of and response to

non-substantive jury questions is not a critical stage of the proceedings); *Musladin v.

Lamarque*, 555 F.3d 830, 842-43 (9th Cir. 2009) (holding that state court's decision that a

trial judge's response to a jury note asking for "amplification" of a jury instruction was

not a 'critical stage' of the trial process was not contrary to or an unreasonable application

23

of Supreme Court precedent).

Because Petitioner is not entitled to a presumption of prejudice under *Cronic*, the

state court next addressed whether Petitioner established prejudice.  The state court held

that he did not.  Petitioner does not make a specific assertion of prejudice in his habeas

petition.  In his state court filings, he alleges that he was prejudiced by the submission to

the jury of a list of witnesses and their nicknames.  The Michigan Court of Appeals held

that, while it was improper for the court to provide the jury with the list, Petitioner was

not prejudiced by the error.

A jury's verdict must be based on evidence presented in open court and not on

evidence from outside sources.  *Sheppard v. Maxwell*, 384 U.S. 333, 350-51 (1966).  A

jury's exposure to extraneous evidence is subject to a harmless error analysis.  *Griffis v.

Hurley*, 151 F. App'x 355 (6th Cir. 2005).  On habeas review, to determine whether an

error is harmless a court must ask whether the error "had [a] substantial and injurious

effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S.

619, 623 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  "To

determine the effect of the error under *Brecht*, [the court should] consider both the impact

of the [error] and the overall weight of the evidence presented at trial."  *Peterson v.

Warren*, 311 F. App'x 798, 805 (6th Cir. 2009), *citing Brecht*, 507 U.S. at 639.  While

this case was not one in which the evidence against Petitioner was overwhelming, it is

difficult to imagine that a list of witnesses and their nicknames had any influence in

determining the jury's verdict, particularly where the nicknames were not a disputed issue

24

at trial.  Thus, the Court finds any error harmless.

### D.  Destruction of Evidence

Next, Petitioner argues that he is entitled to habeas corpus relief because he was deprived of his right to due process when the police destroyed potentially exculpatory evidence.  Petitioner alleges that the police failed to take steps to secure five shell casings and two bullets recovered from the scene of the shooting.  The officer who collected the evidence from the scene testified that he collected the bullets and casings and placed them in evidence envelopes which were left in his office.  He testified that these envelopes were somehow thrown away, presumably by a janitor.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed."  *California v. Trombetta*, 467 U.S. 479, 485 (1984).  "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, *see Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible.  *See Arizona v. Youngblood*, 488 U.S. 51, 58 109 S. Ct. 333, 102 L. Ed.2d 281 (1988)."  *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001).  A defendant's due process rights are violated where material exculpatory evidence is not preserved.  *Trombetta*, 467 U.S. at 489.  For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be

25

unable to obtain comparable evidence by other reasonably available means." *Id.* at

488-89.  The destruction of material exculpatory evidence violates due process regardless

of whether the government acted in bad faith. *See id.* at 488; *Youngblood*, 488 U.S. at 57.

However, "the Due Process Clause requires a different result when . . . deal[ing]

with the failure of the State to preserve evidentiary material of which no more can be said

than that it could have been subjected to tests, the results of which might have exonerated

the defendant." *Youngblood*, 488 U.S. at 56.  "[U]nless a criminal defendant can show

bad faith on the part of the police, failure to preserve potentially useful evidence does not

constitute a denial of due process of law." *Id.* at 58.  A habeas petitioner has the burden

of establishing that the police acted in bad faith in failing to preserve potentially

exculpatory evidence.  *See Malcum v. Burt*, 276 F.Supp.2d 664, 683 (E.D. Mich. 2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan

Court of Appeals, held that Petitioner's rights were not violated because the evidence was

not preserved.  The state court applied the standard articulated in *Youngblood* and held

that Petitioner failed to show that the police acted in bad faith or that the evidence was

exculpatory.  The Court of Appeals reasoned:

> [T]he lost evidence in this case is only potentially exculpatory, and "no
> more can be said than that it could have been subject to tests, the results of
> which might have exonerated the defendant[s]."  *Arizona v. Youngblood*,
> 488 U.S. 51, 57-58; 109 S. Ct. 333; 102 L. Ed. 2d 281 (1988).  "Failure to
> preserve evidentiary material that may have exonerated the defendant will
> not constitute a denial of due process unless bad faith on the part of the
> police is shown." . . . Here, defendants have not shown bad faith.  Sergeant
> DeLeon testified that the envelopes containing the bullets and shell casings
> were thrown away, and he believed that a janitor was responsible.  Because

26

there was no showing that the evidence was destroyed or discarded in bad faith, defendants' right to due process was not violated.

*Finley*, 2004 WL 1488658 at *7.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The petitioner has not shown that the ballistics evidence would have been exculpatory. The record is devoid of evidence that the police or prosecution authorities acted in bad faith – a necessary requirement to establish a constitutional violation where the destroyed evidence was only potentially useful to the defense. Given such circumstances, Petitioner has failed to establish a constitutional violation. Habeas relief is not warranted.

### E.  Cumulative Effect of Alleged Errors

Petitioner claims that the cumulative effect of the alleged errors rendered his trial fundamentally unfair in violation of due process. The cumulative weight of alleged constitutional trial errors in a state criminal proceeding does not warrant federal habeas relief because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir.2005). Therefore, habeas relief is denied on this claim.

### F.  Claims Added By Amendment

Finally, Petitioner amended his petition to include the following additional claims: (i) counsel was ineffective for failing to raise the defense of third-party culpability; (ii) evidence against Petitioner was fabricated; (iii) counsel was rendered ineffective by the

trial court's evidentiary rulings; (iv) Petitioner was denied his right to counsel of choice; and (v) appellate counsel was ineffective in failing to raise these unexhausted claims.

A prisoner challenging his confinement by way of a habeas corpus petition must exhaust his state court remedies prior to seeking federal habeas corpus relief by fairly presenting the substance of each federal constitutional claim in state court.  28 U.S.C. § 2254(b); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  The exhaustion requirement is satisfied if a prisoner "invok[es] one complete round of the State's established appellate review process,"  including a petition for discretionary review to a state supreme court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)The petitioner bears the burden of showing that state court remedies have been exhausted.  *Prather*, 822 F.2d at 1420, n.3.

Petitioner's new claims added by amendment were not presented through one complete round of the state's established appellate review process.  No state court remedy is available to the petitioner to properly exhaust these claims because he already has filed one motion for relief from judgment in the state trial court and does not argue that his claims fall within the narrow exception to the prohibition against filing successive motions for relief from judgment in state court.  Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust."  *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).  "[I]f an unexhausted claim would be procedurally barred under state law, that claim is

28

procedurally defaulted for purposes of federal habeas review." *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Thus, in order to obtain review of his claims under § 2254 he must establish cause and prejudice to excuse his default.

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his defaulted claims. Ineffective assistance of appellate counsel on direct review would not excuse Petitioner's failure to properly exhaust these claims on collateral review in state court. *Hannah*, 49 F.3d at 1196. *See also Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (holding that a claim of ineffective assistance of appellate counsel is properly exhausted when it is raised at the first opportunity to do so-in a post-conviction motion for collateral relief in state court). Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Id*. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence. In assessing the adequacy of petitioner's showing, therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on "actual innocence" allows the reviewing tribunal to consider the probative force of relevant evidence that was either excluded

29

or unavailable at trial. . . . The habeas court must make its determination
concerning the petitioner's innocence in light of all the evidence, including .
. . evidence tenably claimed to have been wrongly excluded or to have
become available only after trial.

* * *

. . . [A]ctual innocence does not merely require a showing that a reasonable
doubt exists in the light of the new evidence, but rather that no reasonable
juror would have found the defendant guilty.  It is not the district court's
independent judgment as to whether reasonable doubt exists that the
standard addresses; rather the standard requires the district court to make a
probabilistic determination about what reasonable, properly instructed
jurors would do.  Thus, a petitioner does not meet the threshold requirement
unless he persuades the district court that, in light of the new evidence, no
juror, acting reasonably, would have voted to find him guilty beyond a
reasonable doubt.

*Id.* (internal quotation omitted).

Petitioner fails to present new, reliable evidence in light of which no reasonable

juror would have found him guilty.  Therefore, these claims are procedurally barred.

## VI.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed

unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of

the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or

deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the

denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to

30

deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

The Court finds that jurists of reason could find the resolution of Petitioner's claim that he was denied the right to counsel at a critical stage of the proceedings to be debatable or wrong. Accordingly, the Court grants a certificate of appealability as to this issue. As to the remainder of Petitioner's claims, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted, and denies a certificate of appealability on the remaining claims.

## VII. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** for Petitioner's claim that he was denied counsel at a critical stage of the proceedings and **DENIED** for the remaining claims.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Amend is **GRANTED**.


s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE: June 10, 2011

31

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Keith Finley, via ordinary U.S. Mail,  and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt<br>Case Manager